(No. 1940—Decided January 19, 1944.)

*Mr. Paul V. House,* for appellant.
*Messrs. Fitzgibbon & Fitzgibbon,* for appellee.

Putnam, J.  This is an appeal on questions of law
from a judgment of the trial court in favor of the de-
fendant.  The plaintiff, Amanda Bending, was the
beneficiary under an accident insurance policy issued
in 1931 to her son, Robert L. Bending, now deceased,
in the sum of $1,000, on which the premiums had been
fully paid at the time of the insured's death.  In Sep-
tember 1942, Robert L. Bending was inducted into the
military service of the United States and in June
1943, while stationed at Fort Bliss, Texas, he ob-
tained a two-day leave of absence and while at a hotel
in El Paso was accidentally killed by falling out of a
window.  Defendant declined liability because, among

other reasons, of a military exemption clause in the insurance contract. A trial was had to the court, a jury being waived, upon the pleadings, agreed statement of facts and the evidence, the defendant not agreeing that the death of insured was accidental.

The trial court in a special finding of facts, found that (a) Decedent, Robert L. Bending, died by reason of bodily injuries sustained through external, violent and accidental means; (b) the insurance policy was in full force and effect at the time of the death of decedent; and (c) the decedent at the time of his injuries and death was in the military service of the United States.

From the above facts the court found as a matter of law that the terms of the policy bar the plaintiff from any recovery if the decedent, at the time of the injuries causing his death, was in the military service in time of war, and rendered a judgment for the defendant.

The sole question before this court is the meaning and validity of the military exemption clauses in the accident policy, and whether the court erred in its conclusions of law.

The policy in question was issued as a supplemental contract to a standard life policy for $1,000, which was issued at the same time, which contained no military clause and the proceeds of which were paid by defendant to the plaintiff.

The military clauses in the supplemental contract are as follows:

The company "hereby agrees to pay * * * provided * * * that death shall not have resulted from bodily injuries sustained while participating in aviation * * * nor sustained while the insured is in the military or naval service in time of war.

"The insurance under this supplementary contract shall be suspended * * * while the insured is in the military or naval service in time of war; in which

event that portion of the additional premium received by the company but unearned during the period of such suspense shall be refunded.''

The plaintiff maintains that, by applying well settled rules of construction of insurance policies, the military clauses in this policy make it mandatory to construe these clauses as meaning ''activities'' and not ''status'' as the basis of exemption; and that if these clauses do, under proper rules of construction, attempt to make status and not activities the basis of exemption of liability, they are null and void as against public policy.

The defendant maintains that these clauses are plain, unambiguous, need no construing and make status of the insured the basis of exemption; and that in so doing they are valid provisions and not void as against public policy.

The question is timely and important and the decisions on some phases of the case are in apparent conflict. Counsel have been diligent in their briefs and argument and have lucidly presented the principles involved. There is only one decision in Ohio, but during the period, 1919-1925, after World War I, the highest tribunals of other states considered similar military clauses, construing the various language used therein and passing on their validity. Consequently, the language in present. policies is somewhat different, made so no doubt to meet the interpretations formerly made. Perhaps one of the best annotations of the case law on the subject is to be found in 137 A. L. R. at page 1263 *et seq.* A perusal of the cases shows the following situation.

The apparent conflict is due in a great measure to the difference in phraseology of the exemption clauses, but the courts in many of these cases, adhering to the well settled rule that in construing an insurance con-

tract which by reason of ambiguities is capable of two reasonable interpretations, that interpretation will be adopted which is most favorable to the insured, have gone to some length in taking a particular word or phrase in the military clause, construing the same as ambiguous, then resolving that ambiguity as meaning activity of a military nature and not status, and holding the insurer liable.

One of those words is "engaged" and it occurs in clauses of which the following is typical:

"If within five years from date hereof, the death of the insured shall occur while engaged in the military or naval service. in time of war, without previously having obtained from the company a permit therefor, the company's liability shall be limited * * *." *Boatwright* v. *American Life Ins. Co.*, 191 Iowa, 253, 180 N. W., 321, 11 A. L. R., 1085.

The court in that case reasons that the word "engaged" connotes "resulting from" or "in consequence of" *etc.* Consequently the clause was not intended to exempt the company from liability by reason of the soldier's mere status of being in the military service, but the exemption only applied where death occurred from activities of a purely military nature which were not common to soldiers and civilians alike. In that case the insured died in camp of influenza. To the same effect are the cases of *Benham* v. *American Central Life Ins. Co.* (1919), 140 Ark., 612, 217 S. W., 462; *Long* v. *St. Joseph Life Ins. Co.* (Mo. App., 1920), 225 S. W., 106; *Rex Health & Accident Ins. Co.* v. *Pettiford* (1920), 74 Ind. App., 507, 129 N. E., 248; *Myli* v. *American Life Ins. Co. of Des Moines,* 43 N. D., 495, 175 N. W., 631, 11 A. L. R., 1097; *Kelly, Admx.,* v. *Fidelity Mutual Life Ins. Co. of Philadelphia,* 169 Wis., 274, 172 N. W., 152; *Barnett* v. *Merchants' Life Ins. Co.,* 87 Okla., 42, 208 P., 271.

The use of the word "risk" in those clauses has also

been used as the basis of the construction of the clause as involving "activities" and not "status." The case of *Atkinson, Admr.,* v. *Indiana National Life Ins. Co.,* 194 Ind., 563, 143 N. E., 629, is illustrative of this type of construction. The policy there provided:

"After one year from the date of issue this policy shall become incontestable if the premiums have been duly paid, except in case of self-destruction within two years, whether sane or insane, and except that military or naval service in time of war without a permit from the company, is a risk not assumed under this policy at any time."

Due to the use of the word "risk" that clause was held to be ambiguous in that it might mean either activities or status and was therefore resolved against the insurer which was held liable for the death of the insured in a motorcycle accident while on leave of absence from duty. Other similar cases are *Reid* v. *American National Assurance Co.,* 204 Mo. App., 643, 218 S. W., 957; *Olson* v. *Grand Lodge A. O. U. W. of North Dakota,* 48 N. D., 285, 184 N. W., 7; *Ruddock* v. *Detroit Life Ins. Co.,* 209 Mich., 638, 177 N. W., 242.

Other cases put emphasis on the phrases "resulting from," "in consequence of," and "active service" in arriving at a similar construction. However, in the case of *Bradshaw, Admr.,* v. *Farmer & Bankers Life Ins. Co.,* 107 Kan., 681, 193 P., 332, where the word "engaged" was used, the court held that even so "status" was meant and not "activities." In the case of *Miller* v. *Illinois Bankers' Life Assn.,* 138 Ark., 442, 212 S. W., 310, where the word "risk" was used the insurer was held not liable.

The great weight of authority is that if the language of the military exemption clause is ambiguous, the ambiguity will be construed against the insurer and the clause will be held to denote military activity and not status.

Just as well settled, however, is the complimentary rule that the court has the duty to enforce insurance contracts as made by the parties and not to rewrite or to distort, under the guise of judicial construction, contracts the terms of which are unambiguous, so long as they do not offend some rule of law or contravene public policy. 29 American Jurisprudence, 172, Section 157.

With this in mind let us re-examine the military exemption clause in the policy in this case. It is:

"Provided that death shall not have resulted from bodily injuries sustained while the insured is in the military service in time of war.

"The insurance under this policy shall be suspended while the insured is in the military or naval service in time of war."

This language is clear and unambiguous. There are no words like "engaged," "risk," "active service," or "in consequence of." There is nothing to construe. The language plainly makes status of the insured in military or naval service the ground of exemption from liability. If such a clause is not void as against public policy, clearly the defendant is not liable. Is it against public policy?

The court in many of the cases above referred to while holding that the particular clause under consideration was ambiguous and therefore to be construed against the insured, specifically recognized the proposition that a clause might be written making status the ground for exemption and it would be valid. In the *Myli case, supra,* the court said:

"From the foregoing provisions it is apparent that the insurance company did not stipulate for nonliability, under either the double indemnity or disability clauses of the policy, for injuries to the insured or for accidental death while his status was that of an enlisted man. * * *

"In the first place, if status were to be made the test, language should have been employed to make it apparent that it was to be the test. For instance, it might well have been stated: 'If within five years from date the insured shall enlist or become inducted into the military or naval service without having obtained a permit therefor,' *etc.*, then status would clearly have been the test."

Similar pronouncements were made by the court in the case of *Malone* v. *State Life Ins. Co.*, 202 Mo. App., 499, 213 S. W., 877; *Kelly, Admx.*, v. *Fidelity Mutual Life Ins. Co., supra,* and other cases.

The question of those clauses being void as against public policy has been raised and answered in the negative in the cases of *Miller* v. *Illinois Bankers' Life Assn., supra; Bradshaw, Admr.*, v. *Farmers & Bankers Life Ins. Co., supra; Marks* v. *Supreme Tribe of Ben Hur,* 191 Ky., 385, 230 S. W., 540.

In the *Marks case* the court said:

"An insurance company or benefit society has the right to select the particular risks it is willing to assume and there is no public policy against a contract of this sort exempting the insurance company in advance from liability for the death of insured while in the military or naval service of the government."

Pronouncements of the other cases cited are to the same effect.

The only authority or expression to the contrary which counsel have cited or this court has been able to find is the case of *Frush* v. *Ohio State Life Ins. Co.* (1920), 22 N. P. (N. S.), 428, 31 O. D., 49, and the dissenting opinion of Judge Grace in the case of *Olson* v. *Grand Lodge A. O. U. W. of North Dakota, supra.* Also, the case of *Illinois Bankers' Life Assn.*, v. *Davancy,* 102 Okla., 302, 226 P., 101, while the court therein does not say so, might have been decided on that ground.

The plaintiff relies, also, upon the following statement in 1 Appleman on Insurance, 692, Section 561:

"The last result is, however, out of line with the reasoning employed by the great majority of courts. It is the overwhelming weight of authority that to relieve the insurer of liability it is necessary that it be clearly shown that the death or injury arose directly from a peculiarly military hazard and was a consequence of such military service."

The construction placed on that pronouncement by the plaintiff we do not believe is warranted for two reasons. First, it must be read in connection with previous statements. "The last result" refers to a case where the insured committed suicide while insane in the military service. Secondly, all of the authorities cited by the writer supporting the statement are the same or of the same type as those hereinbefore analyzed in which the terms "engage," "risk," "resulting from" and "in consequence of" were used.

The *Frush case* was decided in 1920 and arose in this county. It was affirmed by this court and a motion to certify to the Supreme Court was overruled. It is unfortunate that the opinion of this court affirming the same is not available, and the reasoning of the court is not known. In that case the insured died of the Spanish flu while in the military service at Camp Sherman, Ohio, in time of war. The policy in that case had the following military clause:

"This policy shall be null and void, except for the amount of premium paid, if the insured shall die within one year by self destruction, whether sane or insane; or if the insured shall at any time engage in military or naval service in time of war (the militia not in actual service excepted) unless a special written permit therefor has been obtained from the company."

Under that clause the insurer was held liable.

It is to be noted that the term "engage" is used in the clause and therefore it comes squarely within the class of cases hereinbefore analyzed employing this term. The court cited none of them, but did cite the case of *Wells* v. *Connecticut Mutual Life Ins. Co.*, 48 N. Y., 34, 8 Am. Rep., 518, a case arising out of the Civil War.

Under a great majority of the decisions as above shown the court would have been amply justified in arriving at the conclusion it did by a parity of reasoning. That it did so is shown by the following language of the opinion:

"The provision of the policy is 'if the insured was at any time engaged in military or naval service in time of war' the policy should be void.

"In order to come within the meaning of that clause it seems to me that such engagement in military service should be the cause or occasion of the death of the insured in order for the company to escape liability. If the death of the insured was caused by something outside of his military service, and which might have occurred in the same way if he had not been in military service, then the service he was engaged in was not the occasion of his death.

"Engagement in military service means to expose to dangers which were not incident to civil life."

However, the court went further and stated:

"Therefore, it is my opinion that the provision in the policy, so far as it makes such policy void upon entering into military or naval service, would tend to hinder and deter volunteer service and would be against public policy."

That pronouncement is an additional reason for upholding liability.

Another point to be noted in connection with that case is that the policy provided for a forfeiture in case

of engagement in military service while in the instant case the policy never did apply while the insured was in the military service and was only suspended during that time. Consequently, the rule as to forfeitures does not apply. The court in the *Frush case* was amply justified in reaching the conclusion it did and as before indicated we do not know upon what ground it was affirmed. Insofar as the case holds that the making of mere status the ground of exemption of liability renders it void as against public policy, we disapprove of the same. The great weight of reason and authority is to the contrary.

It is argued that one is not in the military service while on leave of absence. This position is untenable. One is in the military service from the time he takes the oath until he receives his discharge, honorable or otherwise, and the courts have uniformly so held. See the *Boatwright, Ruddock, Malone* and *Reid cases, supra.*

For the above reasons we think the court below did not err and the judgment must be and is affirmed.

*Judgment affirmed.*

MONTGOMERY, P. J., and SHERICK, J., concur.